# EXHIBIT A

Electronically Filed
2/23/2021 12:42 PM
Steven D. Grierson
CLERK OF THE COURT

**CMPL**
ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402
CASSANDRA S.M. CUMMINGS, ESQ.
Nevada Bar No. 11944
**EGLET ADAMS**
400 S. Seventh St., Suite 400
Las Vegas, NV 89101
(702) 450-5400; Fax: (702) 450-5451
eservice@egletlaw.com

MATTHEW L. SHARP, ESQ.
Nevada Bar No. 4746
**MATTHEW L. SHARP, LTD.**
432 Ridge Street
Reno, NV 89501
(775) 324-1500; Fax: (775) 284-0675
*Attorneys for Plaintiff*

CASE NO: A-21-829912-B
Department 11

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| ERIKA SMITH, individually and on behalf of all those similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY, ALLSTATE NORTHBROOK INDEMNITY COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, DOES 1 through 10, <br> Defendants. | Case No.: <br> Dept. No.: <br><br> **COMPLAINT** <br><br> **REQUEST FOR BUSINESS COURT** <br><br> **EXEMPT FROM ARBITRATION** <br><br> **Jury Trial Demanded** |

Plaintiff, Erika Smith, by and through undersigned counsel and on behalf of herself and all other similarly situated, hereby submits this Class Action Complaint against Defendants,

1  Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance
2  Company, Allstate Northbrook Indemnity Company, Allstate Property and Casualty Insurance
3  Company, Allstate Vehicle and Property Insurance Company (hereinafter collectively
4  "Allstate"), and DOES 1 through 10.

## I.   INTRODUCTION

1. This action seeks class-wide relief for Defendant Allstate's failure to provide and charge a fair and appropriate insurance premium and to provide premium reduction to its Nevada automobile insurance policyholders amid the COVID-19 pandemic.

2. Plaintiff brings this action on behalf of herself and on behalf of all Nevada residents who held automobile insurance policies through Allstate as of March 1, 2020, and who have thereafter continued to be Allstate automobile policyholders.

3. Plaintiff and the class, along with everyone in this country, have faced substantial life changes since March 1, 2020 because of the COVID-19 pandemic, including reduced driving time and miles. The reduction of driving time and miles driven reduces the risk associated with insuring Plaintiff and the class members' vehicles. Allstate has not taken the appropriate action to reduce Plaintiff and the class members' premiums to accurately reflect the decreased risk.

## II.   PARTIES

4. Plaintiff, Erika Smith, is a resident of the State of Nevada, and a current automobile insurance policyholder of Allstate.

5. Defendants Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, Allstate Northbrook Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Vehicle and Property Insurance Company (hereinafter collectively "Allstate"), are Illinois companies with offices located within Northbrook, Illinois and South Barrington, Illinois.

6. Collectively, Defendants are all part of the Allstate family of companies, licensed in Nevada to sell automobile insurance policies within the State of Nevada.

7. Defendants DOE 1 through 10 are insurance companies that fall within the Allstate umbrella that provide policies of automobile insurance to Nevada residents.

8. That the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants herein designated as DOE are unknown to Plaintiff at this time, and we therefore sue said Defendants by fictitious names. Plaintiff alleges that each named Defendant herein designated as DOE is negligently, willfully, contractually, or otherwise legally responsible for the events and happenings herein referred to and proximately caused damages to Plaintiff as herein alleged. Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such Defendants when same have been ascertained and will further seek leave to join said Defendant in these proceedings. Plaintiff believes each Defendant named as DOE was responsible for contributing to Plaintiff's damages as set forth herein.

### III. JURISDICTION AND VENUE

9. That exercise of jurisdiction by this Court over each and every Defendant in this action is appropriate because each and every Defendant has done, and continues to do business in the State of Nevada, and contracted with Nevada residents, breached contracts with Nevada residents, and violated Nevada laws.

10. Allstate is an insurance company licensed to do business in Nevada, and it sells automobile insurance to Nevada residents and charges and collects premiums from those residents.

11. Allstate sold a Nevada insurance policy to Plaintiff where she resides in Clark County, Nevada.

12. That exercise of jurisdiction by this Court is further appropriate where Plaintiff resides in the County of Clark, State of Nevada.

13. That this Court has jurisdiction over the subject matter of this action. That exercise of the jurisdiction by this Court over Allstate in this action is appropriate because Allstate has done, and continues to do, business in the State of Nevada, and committed the wrongdoings alleged in this Complaint in the State of Nevada. Additionally, this Court has jurisdiction over the claims alleged

herein as they arise out of contracts entered into with Nevada residents and Allstate's actions violate Nevada law.

### IV. FACTUAL BACKGROUND APPLICABLE TO THE PROPOSED CLASS

14. Allstate is a prolific underwriter of automobile insurance in Nevada.

15. On information and belief, and throughout the entirety of the COVID-19 pandemic, Allstate has enjoyed a substantial share of the auto insurance market in Nevada. At all times relevant to this case, Allstate has derived substantial revenues and profits from the sale of automobile insurance to Nevada residents, including Plaintiff, and all others similarly situated.

### V. GENERAL ALLEGATIONS

16. Coronavirus disease 2019 ("COVID-19"), is a novel, virus-borne, and potentially deadly illness that impacts various systems within the body of those infected with the disease. Since its emergence in late 2019, it has spread rapidly across the globe, reaching pandemic levels. On January 20, 2020, it was declared a "public health emergency of international concerns" by the World Health Organization. A week later, the U.S. Secretary of Health and Human Services declared the virus a public health emergency in the United States.

17. COVID-19 is highly contagious and appears capable of spreading exponentially through transmission by persons who are symptomatic, asymptomatic, or pre-symptomatic.

18. As of the date of this complaint, the U.S. Centers for Disease Control and Prevention has recorded over 28 million cases of COVID-19, and over 497,000 COVID-related deaths in the U.S. alone.

19. The State of Nevada suffered over 4,700 COVID-related deaths as of the date of this Complaint.[1]

20. On March 12, 2020, Nevada Governor Steve Sisolak issued the Declaration of Emergency for COVID-19.[2] In that declaration, the Governor "determined that the State of Nevada is

---

[1] https://nvhealthresponse.nv.gov/ (last visited February 22, 2021).
[2] https://gov.nv.gov/News/Emergency_Orders/2020/2020-03-12_-_COVID-19_Declaration_of_Emergency/ (last visited February 22, 2021).

4

experiencing events that require a coordinated response for the health and safety of the public."[3] The declaration "will remain in effect until the Chief Medical Officer notifies the Governor that the health event has been abated and the Governor issues an order terminating the emergency."[4]

21. On March 15, 2020, Governor Sisolak issued the COVID-19 Declaration of Emergency Directive 001 closing all "public, community, and private K-12 schools in the state" until the Order is rescinded.[5]

22. On March 19, 2020, Governor Sisolak issued COVID-19 Declaration of Emergency Directive 002 closing all in-person gaming establishments.[6]

23. On March 20, 2020, Governor Sisolak issued COVID-19 Declaration of Emergency Directive 003 closing all "non-essential businesses" that promote social gatherings and prolonged interactions between individuals where risk of transmission is high.[7] These businesses included recreation centers, clubhouses, nightclubs, movie theaters, massage parlors, adult entertainment establishments, brothels, live entertainment venues, gyms and studios, and aesthetic services (i.e. beauty shops, tanning salons, wax salons).[8]

24. On March 24, 2020, Governor Sisolak issued COVID-19 Declaration of Emergency Directive 007, which stated that "[t]he Nevada general public shall not gather in groups of ten or more in any indoor or outdoor area," and directing local governments to limit the general public's use of "recreational equipment, including, without limitation, playground equipment, basketball courts, volleyball courts, baseball fields, beaches, or football fields, in a manner that causes the congregation of ten or more persons."[9]

---

[3] *Id.*
[4] *Id.*
[5] https://gov.nv.gov/News/Emergency_Orders/2020/2020-03-15_-_COVID-19_Declaration_of_Emergency_Directive_001/ (last visited January 28, 2021).
[6] https://gov.nv.gov/News/Emergency_Orders/2020/2020-03-18_-_COVID-19_Declaration_of_Emergency_Directive_002/ (last visited January 28, 2021).
[7] https://gov.nv.gov/News/Emergency_Orders/2020/2020-03-20_-_COVID-19_Declaration_of_Emergency_Directive_003_(Attachments)/ (last visited January 28, 2021).
[8] *Id.*
[9] https://gov.nv.gov/News/Emergency_Orders/2020/2020-03-24_-_COVID-19_Declaration_of_Emergency_Directive_007_(Attachments)/ (last visited January 28, 2021).

25. On November 10, 2020, Governor Sisolak once again urged all Nevadans to restrict their activities outside the home to only those essential activities for two (2) weeks, dubbed "Stay at Home 2.0." This request is a direct result of the rising numbers of COVID-19 infections within the State. The Governor warned that, if the infection numbers do not decrease, the State will likely be subject to another mandatory shut-down.

26. The practical effect of the COVID-19 crisis and the State of Nevada's response thereto has been to dramatically reduce the vehicle traffic on Nevada's roads. With non-essential businesses and schools closed as well as the limitation on the size of gatherings and people forced to remain at home due to the public health crisis, Nevada residents have been driving less frequently and shorter distances.

27. Vehicular traffic throughout Nevada has been greatly reduced during the COVID-19 pandemic. For example, in April 2020, the vehicular traffic at the Nevada-California border was sixty-six percent (66%) lower than it was in April 2019. Traffic volumes decreased between sixty percent (60%) to seventy percent (70%) compared to the same time periods in 2019. These reductions have been statewide.

28. With fewer people driving fewer miles, there are fewer automobile accidents and, therefore, fewer automobile insurance claims. The COVID-19 pandemic has thus led to a dramatic reduction in automobile insurance claims by Nevada residents. For example, there was a sixty percent (60%) reduction in automobile accidents in Southern Nevada in March 2020 from the prior year. This significant drop in driving, collisions, and automobile insurance claims during the pandemic will almost certainly continue for the foreseeable future, and for as long as the COVID-19 crisis continues.

29. In particular, the COVID-19 pandemic has led to a dramatic reduction in the number of Nevada automobile insurance claims that have been submitted and will be submitted to Allstate.

30. Insurance companies have provided varying forms of premium refunds or credits during the COVID-19 pandemic ranging from nothing at all to the 35% CHUBB provided to its insureds. These refunds or credits are arbitrary and inconsistent in amount and duration. In fact, the only consistency among the refunds or credits is that they are arbitrary and capricious, as well as

insufficient to provide fair, actual, and meaningful relief to the insureds as illustrated in the following table:

| Insurance Company | Quantity | Duration |
|---|---|---|
| Acuity | $50 - $100 one time refund (amount depends on the number of insured vehicles) | One time |
| Allstate | 15% discount | 2 months (April & May 2020) |
| Farmers Insurance | 25% credit for 1 month and 15% for 1 month | 2 months (April & May 2020) |
| Geico | 15% credit | For an entire policy, but ONLY upon insurance renewal between April 8 – Oct 7, 2020. |
| Liberty Mutual | 15% refund | 2 months (April & May 2020) |
| Nationwide | $50 | One time |
| Progressive | 20% credit | 2 months (April & May 2020) |
| State Farm | 25% credit | 3 months (March – May 2020) |
| Travelers | 15% credit | 3 months (April - June 2020) |
| USAA | 20% credit for 3 months then reduced to a 10% credit for 2 months | 5 months (March – July 2020) |

Though each insurance provider represented to its insureds that it understood the challenges individuals are facing during the COVID-19 pandemic and presented that fair refunds and credits were being issued, yet, none of them offered any meaningful relief that actually reflects the reduction in cars on the road and reduced driving during the pandemic.

**A. Allstate's Wrongdoing**

31. Personal insurance rates are set to cover future expected claims and expenses. Auto insurers, including the Defendant Allstate, develop such rates by extrapolating from recent historical experience with premium payments, claims submitted, claim settlement expenses, and non-claim selling and administrative expenses, and then projecting future claims and costs from that data.

7

32. Under Nevada law, Defendant Allstate may not charge an insurance premium that is excessive.

33. A premium is based, in part, upon what Defendant Allstate anticipates for future claims payments both in severity and frequency, and premiums are calculated based upon the extent of the insured's normal driving routine.

34. As a result of COVID-19 restrictions, the frequency and severity of claims incurred by Allstate were dramatically reduced and significantly less than what was anticipated when the premium was charged.

35. As a result of COVID-19 restrictions, Allstate insureds drove significantly less than what was anticipated by Allstate when it developed the premium. As an example, Plaintiff's driving time and mileage has been, and continues to be, greatly reduced because of the COVID-19 pandemic.

36. As a result of COVID-19 restrictions, Allstate has and will incur significantly less expenses in claim payments than what was anticipated when the premium was charged.

37. As a result of COVID-19 restrictions, Allstate has charged and collected an excessive premium to its insureds in the past and into the future.

38. Allstate is aware that it cannot charge an excessive premiums, and it has an affirmative duty under law to return any excessive premiums that was collected.

39. Many auto insurers have provided what the industry refers as "premium relief" to their policyholders, but the so-called "relief" is actually designed to allow insurers to retain excessive premiums in light of COVID-19 restrictions.

40. Allstate knows that the premiums it charged and collected following COVID-19 restrictions is grossly excessive.

41. Specifically, in statements posted on its website (and still shown on the website as of the filing of this Complaint), Allstate provided a premium credit of fifteen percent (15%) for the months of April and May 2020.



8

42. This premium credit is inadequate such that even if the credit is applied to Plaintiff and those similarly situated, the Plaintiff has paid and will continue to pay a grossly excessive premium.

43. This premium credit is designed to allow Allstate to retain a grossly excessive premium and to continue charging a grossly excessive premium into the future.

44. On February 22, 2021, Allstate announced that it was raising its dividends by 50%, which will be payable to its shareholders as of April 1, 2021.[10] This raise in Allstate's dividends was made possible, in large part, by Allstate's increased 2020 car insurance profits. Allstate enjoyed such profits at the expense of its insureds who paid excessive premiums in the midst of the COVID-19 pandemic.

45. Allstate has and will continue to receive a windfall as a result of, the COVID-19 pandemic.

46. Allstate, has continued to retain the excessive premium Plaintiff, and those similarly situated, have paid and will pay into the future.

### VI.   CLASS ACTION ALLEGATIONS

47. Erika Smith brings this action on behalf of herself and all others similarly situated, as representatives of the following proposed class: All Nevada residents who were automobile insurance policyholders of Defendant Allstate as of March 1, 2020, and who have thereafter continued to be Allstate automobile insurance policyholders.

48. <u>Numerosity</u>: Upon information and belief, Plaintiff alleges that the total number of Class members is dispersed across the State of Nevada. Consequently, joinder of the individual Class members would be impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class such that the disposition of the

---

[10] *See* <u>Allstate boosts dividend by 50%, to yield more than double the S&P 500</u>, Tomi Kilgore, (February 22, 2021) (available at https://finance.yahoo.com/m/4e5c5fe5-a7fb-329b-b436-92466fb3249d/allstate-boosts-dividend-by.html, last accessed February 22, 2021).

9

individual claims of the respective Class members through this Class action will benefit both the parties and this Court, and will facilitate judicial economy.

49. <u>Ascertainability</u>: The Class is ascertainable because, on information and belief, each Class member who holds a policy for automobile insurance through Allstate that was active as of March 1, 2020, is kept and stored in Allstate's electronic database and records.

50. <u>Typicality</u>: Plaintiff's claims are typical of the members of the Class. The claims of Plaintiff and the members of the Class are based on the same legal theories and arise from the same conduct. As such, the claims of the Plaintiff and the Class rise and fall together and are typical of one another.

51. <u>Common Questions of Fact and Law Predominate:</u> Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations. There is no plain, speedy, or adequate remedy other than by maintenance of this lawsuit as a class action because individual actions for premium refunds are relatively small, making it economically infeasible for Class Members to pursue remedies individually. The prosecution of separate actions by individual Members of the Class, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to the individual Class Members against Defendants and would establish incompatible standards of conduct for the Defendants. There are several questions of law or fact common to all Class members including, but not limited to:

    a. Whether each member of the proposed class was a policyholder under an existing Allstate automobile insurance policy as of March 1, 2020, and has since continued to be a Allstate policyholder;

    b. Whether Allstate has charged each member an excessive premium following COVID-19 restrictions;

    c. Whether each member of the proposed class has been offered or provided with the inadequate premium reduction described in paragraph 41 above;

    d.  Whether the fairness and/or reasonableness of Allstate's program of premium reduction, as described above, is governed by the terms of its automobile policies and Nevada law;

    e.  Whether Allstate's offer or provision of premium reduction, as described in paragraph 41 above, constitutes an unfair or deceptive act or practice;

    f.  Whether Allstate implemented its offer of premium reduction, as described in paragraph 41 above, with the expectation that others would rely upon any misrepresentation, or any concealment or omission of material fact, subsumed within such offer;

    g.  Whether Allstate's program of premium reduction, as described in paragraph 41 above, is unfair and/or unreasonable;

    h.  Whether Allstate's program of premium reduction, as described in paragraph 41 above, constitutes a breach of the implied covenant of good faith and fair dealing contained in each of the company's Nevada automobile insurance policies;

    i.  Whether Allstate's program of premium reduction, as described in paragraph 41 above, results in a violation of Nevada law; and

    j.  Whether Allstate owes greater COVID-related premium reduction to its Nevada automobile insurance policyholders.

52. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex consumer class action litigation. Plaintiff's attorneys have the resources, expertise, and experience to prosecute this action, and do not have knowledge of any conflicts among the members of Plaintiff's Class, or any conflicts between the Class and Plaintiff's attorneys.

53. <u>Superiority</u>: The class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of a multitude of separate

1  actions would be inefficient and wasteful of judicial resources; (b) the members of the Class may
2  be scattered throughout Nevada and are not likely to be able to enforce their rights unless this
3  action is maintained as a class action; (c) the issues raised can be more fairly and efficiently
4  resolved in the context of a single action rather than through piecemeal litigation in the context
5  of separate actions; (d) the resolution of litigation in a single forum will avoid the danger and
6  resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions
7  would create the risk of inconsistent or varying adjudications; (f) Defendants have acted and will
8  act on grounds applicable to all Class members; (g) individual Class members' premium refund
9  claims are relatively small and the expense and burden of individual litigation makes it impossible
10 for Class members to individually redress the wrongs done to them; and (h) questions of law
11 and/or fact common to the Class, especially on issues of liability, predominate over any individual
12 question.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Declaratory Relief Pursuant to NRS 30.040**

54. Plaintiff, Erika Smith, on behalf of herself and all others similarly situated, repeats and incorporates by reference the allegations set forth in paragraphs 1 through 53 above.

55. Allstate has charged an excessive premium following COVID-19 restrictions.

56. Allstate's program of premium reduction, as described in paragraph 41 above, continues to unlawfully deprive its Nevada automobile insurance policyholders of the full and fair COVID-related premium relief to which they are entitled.

57. Allstate's program of premium reduction, as described in paragraph 41 above, is designed to secure for Allstate, and has secured and will continue to secure for Allstate, an unfair windfall at the expense of Allstate's Nevada automobile insurance policyholders.

58. Allstate's program of premium reduction, as described in paragraph 41 above, is unlawful.

59. An actual controversy of a justiciable nature exists regarding the contractual relationship between the Plaintiff, on behalf of herself and all others similarly situated, and Allstate,

12

concerning the parties' rights and obligations with respect to Allstate's program of COVID-related premium reduction.

60. The controversy is of sufficient immediacy to justify the entry of a declaratory judgment regarding the contracts between the Plaintiff, and all others similarly situated, and Allstate.

61. An actual controversy of a justiciable nature exists regarding Allstate's statutory responsibilities to provide automobile insurance and to not charge excessive premiums.

62. An award of declaratory relief by this Court will terminate some or all the existing controversy between the parties.

## SECOND CAUSE OF ACTION

### Breach of Contract

63. Plaintiff, Erika Smith, on behalf of herself and all others similarly situated, repeats and incorporates by reference the allegations set forth in paragraphs 1 through 62 above.

64. Plaintiff, and Class members, each entered an insurance contract for automobile insurance with Allstate.

65. The insurance contract is governed by Nevada law.

66. Allstate agreed to charge a premium that was reasonable in relation to the risk and was not excessive.

67. Allstate should charge for the right coverage at the right price.

68. Allstate is aware of that the effects of the COVID-19 pandemic and restrictions materially changed the nature of the risk being insured because there was material decrease in the claims frequency and severity.

69. In light of the change of the risk being insured, the pre-COVID-19 premium is excessive in relation to the COVID-19 risks.

70. Plaintiff, and those similarly situated, paid an excessive premium when they paid the premium Allstate charged.

71. Allstate breached the insurance contract when it collected an excessive premium from Plaintiff and those similarly situated.

13

72. As a direct result of Allstate's breach of contract, Plaintiff Erika Smith, on behalf of herself and all others similarly situated, have been damaged as they paid an excessive premium and will continue to pay an excessive premium into the future.

73. As a direct and proximate result of the foregoing and as a result of the breach by Defendants, Plaintiff, and those similarly situated, have sustained damages in an amount exceeding Fifteen Thousand Dollars ($15,000.00).

74. It has been necessary for Plaintiff to retain the services of counsel to represent her, and those similarly situation, to bring this action, and Plaintiff is entitled to recovery of attorneys' fees and costs incurred herein.

## THIRD CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing (Contract)

75. Plaintiff, Erika Smith, on behalf of herself and all others similarly situated, repeats and incorporates by reference the allegations set forth in paragraphs 1 through 74 above.

76. Each existing automobile insurance policy Allstate has issued in the State of Nevada contains an implied covenant of good faith and fair dealing.

77. Allstate owes a duty of good faith and fair dealing to Plaintiff and those similarly situated to act in a manner that is faithful to the purpose and spirit of the contract.

78. In order to fulfill the purpose and spirit of the contract, Allstate must charge a premium that is reasonable in relation to the risk insured against and is not excessive.

79. Allstate is aware that the effects of the COVID-19 pandemic and restrictions materially changed the nature of the risk being insured because there was a material decrease in the claims frequency and severity.

80. In light of the change of the risk being insured, the pre-COVID-19 premium is excessive in relation to the COVID-19 risks.

81. Plaintiff, and those similarly situated, paid an excessive premium when they paid the premium Allstate charged.

82. Allstate has deliberately contravened the intention and spirit of the contract by collecting and retaining the excessive premium.

83. Allstate breached its duty of good faith and fair dealing when it collected and collected and retained an excessive premium from Plaintiff and those similarly situated.

84. As a direct result of Allstate's breach of contract, Plaintiff Erika Smith, on behalf of herself and all others similarly situated, have been damaged as they paid an excessive premium and will continue to do so into the future.

85. As a direct and proximate result of the foregoing and as a result of the breach by Defendants, Plaintiff, and those similarly situated, have sustained damages in an amount exceeding Fifteen Thousand Dollars ($15,000.00).

86. It has been necessary for Plaintiff to retain the services of counsel to represent her, and those similarly situation, to bring this action, and Plaintiff is entitled to recovery of attorneys' fees and costs incurred herein.

## FOURTH CAUSE OF ACTION

### Bad Faith

87. Plaintiff, Erika Smith, on behalf of herself and all others similarly situated, repeats and incorporates by reference the allegations set forth in paragraphs 1 through 86 above.

88. Allstate owes a duty of good faith and fair dealing to Plaintiff, and all others similarly situated insureds and the duty is imposed by law.

89. As part of its duty of good faith and fair dealing, Allstate has a fiduciary-like relationship to Plaintiff and all other similarly situated insureds.

90. Under the law, Plaintiff, and all those similarly situated insureds, have the right to expect trust and confidence in the integrity and fidelity of Allstate.

91. Allstate contracted with Plaintiff, and all those similarly situated, to provide protection, peace of mind, and security as it relates to their automobile insurance.

92. As set forth herein, Allstate, as part of its fiduciary-like duties, cannot charge or retain an excessive premium.

93. Allstate has breached its duty of good faith and fair dealing by charging and collecting from Plaintiff, and all those similarly situated, an excessive premium.

15

94. Allstate has acted unreasonably with knowledge and there is no unreasonable basis for its conduct.

95. Allstate represented to its customers, including Plaintiff, and all those similarly situated, that it was taking measures to reduce costs to Plaintiff, and all those similarly situated, during the COVID-19 crisis.

96. Allstate misrepresented the nature of any relief it may offer to its customers, including Plaintiff, and all those similarly situated.

97. Allstate provided a fifteen percent (15%) premium credit for the months of April and May, 2020. Plaintiff, and those similarly situated, have not received any other reduction from Allstate even though COVID-19 continues to wreak havoc in Nevada 11 months after the emergency declaration and will continue for the foreseeable future.

98. This minimal credit for a limited period is insufficient where driving in the State has declined between forty percent (40%) and seventy percent (70%) depending on the week.

99. In so doing, Allstate is taking advantage of its insureds, including Plaintiff and those similarly situated, by continuing to collect and charge excessive premiums despite the greatly reduced risk and enjoying substantial profits as a result.

100. Allstate has acted in bad faith in breaching the fiduciary responsibility it owes to Plaintiff and all those similarly situated.

101. Allstate's actions were not keeping with the relationship of trust and confidence with its insureds, including Plaintiff and all those similarly situated.

102. As a direct and proximate result of the foregoing and as a result of the breach by Defendants, Plaintiff, and those similarly situated, have sustained damages as they have paid and will continue to pay into the future in an amount exceeding Fifteen Thousand Dollars ($15,000.00).

103. Defendants made intentional misrepresentations to their insureds and acted with conscious disregard to the rights of their insureds thus entitling Plaintiff, and all those similarly situated, to an award of punitive damages.

104.     It has been necessary for Plaintiff to retain the services of counsel to represent her, and those similarly situation, to bring this action, and Plaintiff is entitled to recovery of attorneys' fees and costs incurred herein.

### FIFTH CAUSE OF ACTION

**Violation of Nevada's Deceptive Trade Practices Act (NRS §§ 598.0903 to 598.0999)**

105.     Plaintiff, Erika Smith, on behalf of herself and all others similarly situated, repeats, and incorporates by reference the allegations set forth in paragraphs 1 through 104 above.

106.     At all times relevant herein, Defendants violated the Nevada Deceptive Trade Practices Act, §§ 598.0903 to 598.0999, by representing to its automobile insurance policyholders that they will receive premium rates based upon risk factors, offering an inadequate premium reduction in light of the COVID-19 pandemic, and failing to take into consideration the ongoing decrease in risk due to the decreased volume of vehicle traffic on all roads throughout Nevada.

107.     Defendant made false or misleading statements of fact concerning the price and cost of its automobile insurance policies, as set forth above, in violation of NRS 598.0915(13) and otherwise knowingly made false representations in its communications with automobile insurance policyholders regarding the COVID-19 premium reduction described above.

108.     In making its offer of premium reduction, Allstate represented to its Nevada automobile insurance policyholders (implicitly, if not explicitly) that such offer is fair and reasonable, when in fact it is neither.

109.     In making its offer of premium reduction, Allstate concealed from its Nevada automobile insurance policyholders, or omitted to share with such policyholders, the inadequacy and unfairness of that offer. Allstate engaged in such conduct with the intent that others rely upon such concealment and/or omission.

110.     In making its offer of premium reduction, Allstate expressly represented to its Nevada automobile insurance policyholders that it is "committed to helping [insureds] through this challenging time." This was a misrepresentation of Allstate's intent as the premium credit

17

was only provided once even though Governor Sisolak's March 12, 2020 emergency declaration has been ongoing for 11 months, and may continue for several months.

111. As a direct result of Allstate's conduct, Plaintiff Erika Smith, on behalf of herself and all others similarly situated, have been deprived of fair and adequate premiums as well as COVID-related premium reduction to which they are fairly and lawfully entitled.

112. As a direct and proximate result of the foregoing and as a result of the breach by Defendants, Plaintiff, and those similarly situated, have sustained damages in an amount exceeding Fifteen Thousand Dollars ($15,000.00).

113. Defendants made intentional misrepresentations to their insureds and acted with conscious disregard to the rights of their insureds thus entitling Plaintiff, and all those similarly situated, to an award of punitive damages.

114. It has been necessary for Plaintiff to retain the services of counsel to represent her, and those similarly situation, to bring this action, and Plaintiff is entitled to recovery attorneys' fees and costs incurred herein.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, and those similarly situated, pray for relief and damages as follows, that the court:

A. Determine this action is a proper class action and appoint Plaintiff representative of the Class under Rule 23 of the Nevada Rules of Civil Procedure;

B. Declare the parties' rights, duties, status, or other legal relations;

C. Enter the judicial declarations sought by this complaint;

D. Award compensatory damages to Plaintiff, and all others similarly situated, for Allstate's wrongful conduct detailed above;

E. Award punitive damages;

F. Award to Plaintiff, and all others similarly situated, all attorneys' fees and costs; and

///

///

G.  Award such other and further relief as this Court deems just and appropriate.

DATED this 23rd day of February, 2021.

| EGLET ADAMS | MATTHEW L. SHARP, LTD. |
|---|---|
| *(signature)* | */s/ Matthew L. Sharp* |
| ROBERT T. EGLET, ESQ.<br>Nevada Bar No. 3402<br>CASSANDRA S.M. CUMMINGS, ESQ.<br>Nevada Bar No. 11944<br>*Attorneys for Plaintiff* | MATTHEW L. SHARP, ESQ.<br>Nevada Bar No. 4746 |